IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NICO ENTERPRISES, INC., et al.        :

                                         :

     v.        :   Civil Action No. DKC 15-2832

                                          :

PRINCE GEORGE'S COUNTY, MARYLAND

                                          :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this case raising constitutional challenges to zoning ordinances is a motion to dismiss or, in the alternative, for summary judgment filed by Defendant Prince George's County (the "County"). (ECF No. 7). Also pending is a motion for a temporary restraining order and preliminary injunction filed by Plaintiff Nico Enterprises, Inc. ("Plaintiff"). (ECF No. 10).[1]  The relevant issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following

---

[1]  Plaintiff purports to bring this action on behalf of itself and John and Jane Doe, who are "representative patron[s] of Plaintiff['s] businesses, and all those similarly situated whose rights have been violated by the vague and overbroad statute." (ECF No. 1 ¶¶ 7-8). Plaintiff may not, however, assert a vagueness claim on behalf of a Doe plaintiff. *See Maages Auditorium v. Prince George's County, Md.* (*Maages I*), 4 F.Supp.3d 752, 762 (D.Md. 2014). As discussed below, Plaintiff has standing to bring an overbreadth claim, and may do so without the Doe plaintiffs. Accordingly, John and Jane Doe will be dismissed as plaintiffs.

reasons, the County's motion will be granted. Plaintiff's motion will be denied as moot.

## I.   Background

This action is one of a series of cases brought by adult entertainment establishments located within the County challenging two recent County ordinances (CB-46-2010 and CB-56-2011) restricting adult entertainment businesses (the "ordinances"). A recent opinion summarized the ordinances' restrictions:

> [CB-46] banned "adult entertainment" businesses from being located anywhere in the County but Zone I-2, an industrial zone. §§ 27-461, 473. Additionally, adult entertainment businesses could only operate between 5:00 PM and 3:00 AM, must be located at least one thousand (1,000) feet from any school, or any other building or use providing adult-oriented performances, and at least one thousand (1,000) feet from any residential zone or land used for residential purposes in any zone. § 475-06.06. Establishments "providing adult-oriented performances lawfully established, operating and having a validly issued use and occupancy permit" at the time of CB-46's enactment had until May 1, 2013 to conform to the new use and location requirements.
> CB-56 was adopted by the County Council on November 15, 2011. . . . "Adult entertainment" remained permitted solely in the I-2 zone, but CB-56 permitted "adult entertainment" businesses currently existing and operating with a valid use and occupancy permit in zones C-S-C and C-M (commercial zones), and I-1 and U-L-I (industrial) to continue to operate as nonconforming provided they obtain a Special Exception. Applications for such an exception were due

2

> by June 1, 2012.  CB-56 eliminated the May
> 1, 2013 deadline to conform.  Based on
> Plaintiffs' business locations, they were
> each rendered nonconforming by CB-56 and
> must obtain a Special Exception to remain in
> their present locations.

*Maages I*, 4 F.Supp.3d at 759 (citations omitted).  CB-56

contains the current definition of adult entertainment at issue

here:

> (7.1)  **Adult Entertainment:** Adult
> Entertainment means any exhibition,
> performance or dance of any type conducted
> in a premise where such exhibition,
> performance or dance involves a person who:
> (A) Is unclothed or in such attire,
> costume or clothing as to expose to view any
> portion of the breast below the top of the
> areola or any portion of the pubic region,
> anus, buttocks, vulva or genitals with the
> intent to sexually arouse or excite another
> person; or
> (B) Touches, caresses or fondles the
> breasts, buttocks, anus, genitals or pubic
> region of another person, or permits the
> touching, caressing or fondling of his/her
> own breasts, buttocks, anus, genitals or
> pubic region by another person, with the
> intent to sexually arouse or excite another
> person.

(ECF No. 7-2, at 24).

On September 21, 2015, Plaintiff filed a complaint seeking

a declaratory judgment that CB-46 and CB-56 are unconstitutional

under the First and Fourteenth Amendments.  (ECF No. 1).

Specifically, the complaint alleges:

> a. The ordinance unconstitutionally
> abridges freedom of speech and expression

3

and imposes an impermissible restraint on constitutionally protected expression;

b. The ordinance is irrational, arbitrary, and capricious because it does not further a substantial governmental interest;

c. The ordinance is not narrowly tailored to further any governmental interest substantial or otherwise;

d. The ordinance was enacted without relevant empirical information to support it;

e. The ordinance was adopted without any valid evidence upon which the County could rely to show adult entertainment in general and Plaintiff's business in particular cause adverse secondary effects;

f. The laws were adopted without any evidence that the County's existing zoning law was inadequate or insufficient to address any perceived adverse secondary effects;

g. The ordinance does not all[ow] ample alternative avenues of communication;

h. The vagueness and subjective definitions of the ordinance would lead human beings of common intelligence to necessarily guess as to the meaning of these terms and differ as to their application;

i. The ordinance deprives the Plaintiffs of their right to equal protection of the laws;

j. The ordinance does not define the word "premises" in paragraph "A";

k. The ordinance contains terms that are unconstitutionally vague and do not provide adequate guidance to law enforcement officers, board members or any other agent of the County who themselves would have to necessarily guess as to the meanings of the terms and differ as to their applications thus leading to differential application of the law; [and]

l. The subject legislations are unconstitutionally vague and [are] thus null and *void ab initio*.

(*Id.* at 9-10).   On October 30, the county filed the pending motion to dismiss.   (ECF No. 7).   Plaintiff responded (ECF No. 8), and the County replied (ECF No. 9).

On April 1, 2016, the County issued a cease and desist letter to Plaintiff and other nonconforming adult entertainment businesses within the County.   (ECF No. 10-1, at 3-15).   The letter ordered that Plaintiff "cease and desist all adult entertainment activities no later than 5:00 p.m. Friday, April 8, 2016." (*Id.* at 3).   On April 27, Plaintiff filed the pending motion for a temporary restraining order and preliminary injunction.   (ECF No. 10).   To date, the County has not taken enforcement action against Plaintiff beyond sending the cease and desist letter and has represented that "it would take no action to disturb the status quo pending this Court's resolution of all outstanding motions for temporary restraining orders and/or preliminary injunctions." (ECF No. 12 ¶ 2).

## II.   Standard of Review

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint.[2]   *Presley v. City of*

---

[2] The County moves to dismiss or, in the alternative, for summary judgment.   A court may, without converting a motion to dismiss into a motion for summary judgment properly "take judicial notice of matters of public record" and "consider documents attached to the complaint . . . as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Philips v. Pitt Cnty. Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citations omitted).

*Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). A plaintiff's complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).

At this stage, all well-pleaded allegations in a complaint must be considered as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and all factual allegations must be construed in the light most favorable to the plaintiff, *see Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). In evaluating the complaint, unsupported legal allegations need not be accepted. *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Legal conclusions couched as factual allegations are insufficient, *Iqbal*, 556 U.S. at 678, as are conclusory factual allegations devoid of any

---

Accordingly, the County's motion will be analyzed as a motion to dismiss.

reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). Ultimately, a complaint must "'permit[] the court to infer more than the mere possibility of misconduct' based upon 'its judicial experience and common sense.'" *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679).

**III. Analysis**

   **A.   Claims Addressed in *Maages***

   The County argues that this court's reasoning in *Maages* is dispositive here and warrants dismissal of all of Plaintiff's claims other than its claims of overbreadth and vagueness. (ECF No. 7-1, at 4-6). In its response, Plaintiff concedes that its Equal Protection claim should be dismissed in light of *Maages*. (ECF No. 8, at 9-10). The plaintiffs in *Maages* brought challenges to the ordinances that were similar to Plaintiff's claims here. In *Maages I*, the court granted judgment for the County on the following claims: violation of the Equal Protection Clause, lack of required evidentiary support for the ordinances, lack of adequate procedural safeguards in the special exception process, vagueness, and unbridled administrative discretion. *Maages I*, 4 F.Supp.3d at 760, 779. In *Maages v. Prince George's County* (*Maages II*), No. DKC-13-1722, 2016 WL 827385, at *2-4 (D.Md. Mar. 3, 2016), the court

held that the ordinances left open the constitutionally-required alternative avenues of communication and did not violate Maryland's amortization doctrine.

Here, Plaintiff puts forth multiple constitutional claims in twelve paragraphs within one count.  Some paragraphs assert duplicative claims, and others assert one theory or portions of a claim.  It is clear, however, that *Maages I* and *II* granted judgment for the County on claims identical to the ones Plaintiff brings, other than its assertion of overbreadth and vagueness.[3]  Accordingly, for the reasons articulated in *Maages I* and *II*, the County's motion to dismiss will be granted on all claims in the complaint other than overbreadth and vagueness, which require more detailed discussion.

**B.   Overbreadth**

Plaintiff asserts that the definition of "adult entertainment" in CB-56 is overbroad because it "will burden a multitude of mainstream musical, theatrical, dance productions, art work and even activities in private homes." (ECF No. 8, at 17).  The County argues that Plaintiff does not have standing to challenge CB-56's overbreadth because "the challenged zoning ordinances are clearly applicable" to Plaintiff.  (ECF No. 7-1,

---

[3] Although the court in *Maages I* entered judgment for the County on a claim of vagueness, Plaintiff here appears to allege a different aspect of the ordinances is vague.  Accordingly, a more thorough analysis of the vagueness challenge is warranted.

at 6-7).  The County also contends that the definition of "adult entertainment" is not overbroad because it is limited to activity that is done "with the intent to sexually arouse or excite another person" (the "intent clause").  (*Id.* at 9).  The County notes that it "interprets this language to mean the primary purpose of the entertainment act [must be] to sexually arouse or excite another person, not [merely have] the incidental effect of sexually arousing or exciting another person." (*Id.* at 11).

Plaintiff has standing to bring its overbreadth claim even though it does not argue that CB-56 is overbroad as applied to its business.  "The overbreadth doctrine constitutes 'a departure from traditional rules of standing.'"  *Giovani Carandola, Ltd. v. Bason* (*Carandola I*), 303 F.3d 507, 512 (4th Cir. 2002) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973)).  Under the overbreadth doctrine, a party "may 'challenge a statute on its face because it also threatens others not before the court — those who desire to engage in legally protected expression but who may refrain from doing so rather than risk prosecution or undertake to have the law declared partially invalid.'"  *Id.* (quoting *Board of Airport Comm'rs v. Jews for Jesus, Inc.*, 482 U.S. 569, 574 (1987)).  Accordingly, Plaintiff has standing to challenge the overbreadth of CB-56.

The United States Court of Appeals for the Fourth Circuit addressed similar overbreadth challenges to laws restricting adult entertainment in the *Carandola* cases.   The Fourth Circuit explained:

> "[W]here conduct and not merely speech is involved . . . the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick*, 413 U.S. at 615.   "[A] law should not be invalidated for overbreadth unless it reaches a substantial number of impermissible applications. . . ." [*New York v.*] *Ferber*, 458 U.S. [747,] 771 [(1982)].   If an overbreadth challenge succeeds, "any enforcement" of the regulation at issue is "totally forbidding." *Broadrick*, 413 U.S. at 613.   Thus, the Supreme Court has famously cautioned that the overbreadth doctrine "is, manifestly, strong medicine" and should be used "sparingly and only as a last resort." *Id.* A court should invoke a "limiting construction" or employ "partial invalidation" before resorting to a finding of facial overbreadth.   *Id.*

*Giovani Carandola, Ltd. v. Fox* (*Carandola II*), 470 F.3d 1074, 1081 (4th Cir. 2006).   The parties agree that intermediate scrutiny applies, and the court has previously applied such scrutiny when assessing the ordinances' constitutionality.   *See Maages I*, 4 F.Supp.3d at 762-63; *see also Legend Night Club v. Miller*, 637 F.3d 291, 299 (4th Cir. 2011) (applying intermediate scrutiny to Maryland statute restricting adult entertainment);

10

*Carandola I*, 303 F.3d at 515 (applying intermediate scrutiny to North Carolina statute restricting adult entertainment).

"To withstand intermediate scrutiny, [the County] must demonstrate that a statute 'materially advances an important or substantial interest by redressing past harms or preventing future ones.'" *Carandola II*, 470 F.3d at 1082 (quoting *Satellite Broad. & Commc'ns Ass'n v. FCC*, 275 F.3d 337, 356 (4th Cir. 2001)). "[E]ven in the absence of evidence adduced at a hearing or in the submissions, Fourth Circuit jurisprudence has held that appeals to 'common sense' and 'common experience' are sufficient for the County to meet its burden in demonstrating a substantial interest." *Maages I*, 4 F.Supp.3d at 764 (citing *Legend Night Club*, 637 F.3d at 299; *Imaginary Images v. Evans*, 612 F.3d 736, 742 (4th Cir. 2010); *Carandola II*, 470 F.3d at 1082. Indeed, in *Carandola II*, the Fourth Circuit determined that "even without considering any evidence, we can conclude that the State has a substantial interest in regulating nude and topless dancing, because such entertainment has a long history of spawning deleterious effects." *Carandola II*, 470 F.3d at 1082 (citation and internal quotation marks omitted). Accordingly, the County has a substantial interest in regulating adult entertainment.

A law is overbroad if it reaches a "substantial number" of impermissible applications such as artistic theater, dance, and

musical productions.  *See id.* at 1081 (citing *Ferber*, 458 U.S. at 771).  The key question in this case is whether the definition of "adult entertainment" in CB-56 is more similar to the definition in *Carandola I*, which the Fourth Circuit found to be overbroad, or the amended definition at issue in *Carandola II*, which the Fourth Circuit upheld.  Of particular importance is whether the intent clause sufficiently limits the scope of CB-56.

The statute at issue in *Carandola I* prohibited, *inter alia*, the following from taking place at establishments permitted to sell alcoholic drinks:

> (4) Any conduct or entertainment by any person whose private parts are exposed or who is wearing transparent clothing that reveals the private parts;
> (5) Any entertainment that includes or simulates sexual intercourse or any other sexual act; or
> (6) Any other lewd or obscene entertainment or conduct, as defined by the rules of the [North Carolina Alcoholic Beverage Control] Commission [(the "Commission")].

*Carandola I*, 303 F.3d at 510.  Pursuant to the statute, the Commission promulgated a rule that provided, in relevant part:

> (a) No permittee or his employee shall allow any person to perform acts of or acts that simulate:
> (1) sexual intercourse, masturbation, sodomy, bestiality, oral copulation, flagellation, or any sexual acts that are prohibited by law;

> (2) the touching, caressing or fondling
> of the breasts, buttocks, anus, vulva or
> genitals;
> (3) the display of the pubic hair,
> anus, vulva or genitals.

*Id.* The Fourth Circuit, in upholding the district court's preliminary injunction, held: "The restrictions challenged here . . . sweep far beyond bars and nude dancing establishments. They reach a great deal of expression in the heartland of [the First Amendment's] protection." *Id.* at 516 (alteration in original) (citation and internal quotation marks omitted). The Fourth Circuit continued:

> As the Commission has conceded, the plain
> language of the restrictions prohibit[ed] on
> licensed premises any entertainment that
> simulates sexual behavior, even if
> performers are fully clothed or covered, and
> even if the conduct is integral to the
> production — for example, a political
> satire, a Shakespeare play depicting young
> love, or a drama depicting the horrors of
> rape. The Commission has further conceded
> that the restrictions have the same
> prohibitory effect on much non-erotic dance
> — such as a ballet in which one dancer
> touches another's buttock during a lift —
> and all nudity or simulated nudity, however
> brief, in productions with clear artistic
> merit — such as the Pulitzer Prize winning
> play, *Wit.*

*Id.* Thus, the Fourth Circuit agreed that North Carolina impermissibly burdened a substantial amount of "mainstream entertainment." *Id.* at 520.

In response to *Carandola I*, the North Carolina legislature amended the statute restricting adult entertainment.  The new statute prohibited:

> (1) Any conduct or entertainment by any person whose genitals are exposed or who is wearing transparent clothing that reveals the genitals;
> (2) Any conduct or entertainment that includes or simulates sexual intercourse, masturbation, sodomy, bestiality, oral copulation, flagellation, or any act that includes or simulates the penetration, however slight, by any object into the genital or anal opening of a person's body; or
> (3) Any conduct or entertainment that includes the fondling of the breast, buttocks, anus, vulva, or genitals.

*Carandola II*, 470 F.3d at 1078.  Importantly, the statute excepted "persons operating theaters, concert halls, art centers, museums, or similar establishments that are primarily devoted to the arts or theatrical performances, when the performances that are presented are expressing matters of serious literary, artistic, scientific, or political value." *Id.* at 1079.

The Fourth Circuit upheld the amended statute against an overbreadth challenge for two reasons.  First, the Commission acknowledged that the "prohibition on simulated sexual acts only applies to performances that give the realistic impression or illusion that sexual intercourse [or masturbation, etc.] is being performed for the audience."  *Id.* at 1083 (alteration in

14

original) (internal quotation marks omitted). Thus, "[u]nder the Commission's interpretation, the new statute [had] no prohibitory effect on non-erotic dance and would not apply to 'other mainstream entertainment, including popular and award-winning musicals such as *Cabaret*, *Chicago*, *Contact*, and *The Full Monty*.'" *Id.* (quoting *Carandola I*, 303 F.3d at 516). The court noted that it "must apply a reasonable limiting construction where one is available" and determined that "the statute is 'readily susceptible' to the construction offered by the Commission, and [the court had] no reason to doubt that the Commission will enforce the statute in accordance with this limited interpretation." *Id.* at 1084 (citing *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 397 (1988)). Moreover, the Fourth Circuit was persuaded that the language excepting establishments presenting matters of "serious literary, artistic, scientific, or political value" was sufficient to "shelter most protected activity." *Id.* at 1084-85.

The language at issue here falls between the two provisions in *Carandola I* and *II*. CB-56 does not contain the explicit exception that existed in *Carandola II*, nor does it limit its scope to conduct that "simulates" sexual activity. On the other hand, the intent clause provides a certain amount of restraint that was not present in *Carandola I*. The County asserts that the intent clause effectively "limits the application of the

15

definition of adult entertainment to certain premises, specifically those known colloquially as strip clubs." (ECF No. 7-1, at 9). Like in *Carandola II*, CB-56 does not reach mainstream entertainment, the County argues, because the primary purpose of such entertainment is not for the sexual arousal of others. For example, the County contends that any mainstream entertainment (such as a dancer lifting another dancer by her buttocks or an artistic depiction of nudity) that may appear to fall under CB-56 would not be prohibited because the intent behind such mainstream entertainment is artistic or musical and not an intent to arouse or excite another person sexually. (*See* ECF No. 7-1, at 11-12). Plaintiff counters that "[n]othing in CB-56 can lead a reasonable person to believe that this definition only applies to strip clubs." (ECF No. 8, at 22).[4]

---

[4] Plaintiff's discussion of *Massachusetts v. Oakes*, 491 U.S. 576 (1989) is unclear and of little use. Plaintiff appears to argue that the Supreme Court of the United States found a criminal statute prohibiting the display of underage nudity with a "lascivious intent" to be overbroad. In reality, there is no majority opinion in *Oakes*. The most that can be read from the three opinions is a suggestion that the "lascivious intent" language may have saved the statute from being facially overbroad, which cuts against Plaintiff here. Justice O'Connor's plurality opinion determined that the legislature's amendment of the statute to add the intent clause mooted the criminal defendant's facial overbreadth challenge. *Id.* at 583-84 (plurality opinion). Justice Scalia, writing for himself and Justice Blackmun, said that the original statute was not facially overbroad. *Id.* at 588 (Scalia, J., concurring in the judgment in part and dissenting in part). Finally, Justice Brennan, dissenting on behalf of himself and two other Justices, believed that the original statute was facially overbroad, but

It argues that CB-56 applies to "any exhibition, performance or dance of any type." (*Id.*).

Plaintiff's analysis of CB-56 ignores the function of the intent clause and fails to understand its limiting effect. Plaintiff provides many examples of physical contact and nudity within the context of mainstream entertainment and art, but it does not argue that there is a "realistic danger" that CB-56 reaches such conduct. Plaintiff fails to show how the intent behind such mainstream entertainment could be considered sexually to arouse or excite as opposed to further musical, artistic, or theatrical goals, or otherwise provide entertainment. *See MJJG Rest. LLC v. Horry Cnty.*, 102 F.Supp.3d 770, 791 (D.S.C. 2015) ("[I]t is not enough that the challenged regulation *could* be interpreted and applied in ways that would be impermissible; there has to be a 'realistic danger' that the First Amendment rights will be infringed."). Although the

---

"venture[d] no views as to the constitutionality" of the amended statute and noted that the intent clause may have "lessen[ed] its threat to protected conduct." *Id.* at 597, and n.6 (Brennan, J., dissenting).

The Supreme Court remanded the case to the Supreme Judicial Court of Massachusetts for further proceedings to determine whether the original version of the statute, without the intent clause, was constitutional as applied to the defendant. *Id.* at 585 (plurality opinion). On remand, the Supreme Judicial Court upheld the defendant's conviction because "under Federal constitutional law, the Commonwealth's interest in protecting children permits the application of [the statute] to the defendant's conduct." *Commonwealth v. Oakes*, 407 Mass. 92, 98 (1990).

17

Case 8:15-cv-02832-DKC   Document 14   Filed 05/13/16   Page 18 of 21

Fourth Circuit has not ruled on precisely the same language, the Sixth Circuit has held that a statute with a similar intent clause was not overbroad. *See J.L. Spoons, Inc. v. Dragani*, 538 F.3d 379, 384 (6th Cir. 2008).  The Sixth Circuit held:

> The prohibition against sexual contact applies only if the purpose of the contact is to arouse sexually or to gratify the other person.  *By its own terms*, [the prohibition] does not apply to contact done in furtherance of legitimate works of art for the purpose of conveying artistic meaning, such as the touching of an actor's thigh in a play.  Thus, mainstream works of art that merely suggest sexual activity will not be burdened.

*Id.* (emphasis added).  Therefore, the intent clause, in a practical sense, performs a similar function as the exception in *Carandola II* and prevents CB-56 from reaching a substantial number of impermissible applications.

Moreover, the County's proposed reading of the intent clause to require that the "primary purpose of the entertainment act was to sexually arouse or excite another person" is a "readily susceptible" limiting construction that further reduces any fear of CB-56 reaching impermissible applications.  *See Carandola II*, 470 F.3d at 1084.  Unlike in *Legend Night Club* or *Carandola I*, where the text of the restrictions had *no* limiting language, *see Legend Night Club*, 637 F.3d at 301; *Carandola I*, 303 F.3d at 517, CB-56's intent clause is readily susceptible to the County's proposed construction.  Accordingly, the County's

motion to dismiss will be granted as to Plaintiff's overbreadth claim.

### C.    Vagueness

As a threshold matter, the County is correct that Plaintiff lacks standing to bring a claim asserting that the ordinances are unconstitutionally vague.   Although a plaintiff may assert an *overbreadth claim* on behalf of others, "[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982); *see MJJG Rest.*, 102 F.Supp.3d at 793; *Bigg Wolf Discount Movie Sales, Inc. v. Montgomery Cnty., Md.*, 256 F.Supp.2d 385, 398-99 (D.Md. 2003) (citing *Hart Book Stores v. Edmisten*, 612 F.2d 821 (4th Cir. 1979)).   Here, Plaintiff admits that it is a provider of adult entertainment "within the definitions now contained in the County's Adult Entertainment provisions."   (ECF No. 1 ¶ 11). Accordingly, Plaintiff lacks standing to allege the ordinances are vague.

Even if Plaintiff had standing, however, the ordinances would still survive its vagueness challenge.   "In assessing a vagueness challenge, a court must ask whether the government's policy is 'set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply

with.'" *Imaginary Images*, 612 F.3d at 749 (quoting *Carandola II*, 470 F.3d at 1079).   It is not entirely clear what terms Plaintiff alleges are unconstitutionally vague.   Plaintiff may not state a general claim of vagueness with broad, conclusory assertions in its complaint that "[t]he vagueness and subjective definitions of the ordinance would lead human beings of common intelligence to necessarily guess as to the meaning of these terms and differ as to their application."   (ECF No. 1 ¶ 31(h)). Such assertions are no more than "labels and conclusions" and a "formulaic recitation of the elements of a cause of action," and thus are insufficient to survive a motion to dismiss.   *See Iqbal*, 556 U.S. at 679 (citation omitted).   Moreover, Plaintiff may not amend the complaint in its opposition by asserting, for the first time, that specific language is unconstitutionally vague.   The only term the complaint identifies or even alludes to as being vague is the term "premise."   (ECF No. 1 ¶ 31(j)). In its response, Plaintiff elaborates that CB-56 "fails to explain what venue the prohibited conduct is allowed, if there are any exceptions, and even if such conduct is prohibited in the privacy of a resident's home."   (ECF No. 8, at 25). Accordingly, Plaintiff's vagueness claim is limited to the term "premise."

Plaintiff has failed to allege plausibly that the term "premise" is unconstitutionally vague, and it is clear that the

20

ordinances do not regulate private conduct within a home.  The restrictions in CB-46 and CB-56 were placed in the section of the County Code relating to commercial and industrial zoning, and it is apparent that the ordinances apply only to businesses or "establishments" offering adult entertainment.  Perhaps the County could have been more precise in its definition of the term "premise," but "unavoidable imprecision is not fatal and celestial precision is not necessary." *Bigg Wolf*, 256 F.Supp.2d at 399 (citing *Hart Book Stores*, 612 F.2d at 821).  Although not as clear as the statute in *Carandola II*, which referred to "licensed premises," an ordinary person exercising ordinary common sense would understand that the ordinances here apply to businesses exhibiting adult entertainment, as defined in CB-56.  Accordingly, the County's motion to dismiss will be granted as to Plaintiff's vagueness claims.

**IV.  Conclusion**

    For the foregoing reasons, the County's motion to dismiss will be granted.  Plaintiff's motion will be denied as moot.  A separate order will follow.

                                    _____/s/_____
                                    DEBORAH K. CHASANOW
                                    United States District Judge